UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-61749-CIV-MARTINEZ/DUBÉ

**CONSENT CASE**

GURTRAM J. JOHNSON,

      Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.

_____/

**MEMORANDUM ORDER**

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the

Defendant (D.E. #21) and the Motion for Summary Judgment filed by the Plaintiff (titled

Memorandum in Support of Motion for Summary Judgment) (D.E. #6) pursuant to the consent of

the parties and an Order of Reference entered by the Honorable Jose E. Martinez, United States

District Judge. The issue before this Court is whether the record contains substantial evidence to

support the denial of benefits to Plaintiff Gurtram J. Johnson (hereinafter "Johnson" or "Plaintiff").

**I. FACTS**

Johnson filed an application for supplemental security income (SSI) benefits on December

27, 2002, alleging an onset of disability as of July 20, 2001. (R. 47B).[1] This application was denied

initially and on reconsideration. (R. 28, 34). Following a hearing (R. 190-203), the ALJ issued a

decision denying the request for benefits. (R. 8-19). A request for review filed with the Appeals

---

1 All references are to the record of the administrative proceeding filed as part of the
Defendant's answer.

Council (R. 7) was denied. (R. 4).  The Plaintiff sought review in this Court, and on May 31, 2005, the case was reversed and remanded for further proceedings. (R. 249-261).

On remand, a supplemental hearing was held (R. 228-241), and the ALJ issued a new decision denying the request for benefits. (R. 209-218).   A request for review filed with the Appeals Council (R. 207) was denied. (R. 204).

The Plaintiff, age 44, appeared with counsel at the first hearing on January 7, 2004. (R. 194). Johnson testified that he had an eleventh grade education and that he last worked in 2001. (R. 194). The Plaintiff listed his prior employment, which included work as a handyman and deliveryman. (R. 195-196).  According to Johnson, he was unable to do those prior jobs due to a back problem which caused something to push against his nerve and a bone. (R. 197).  The Plaintiff stated that this condition came about when he was injured on June 5, 2001, while working during his incarceration in a correctional facility. (R. 197).

Johnson testified that he was advised following the accident that he might require surgery and that the doctor indicated that the Plaintiff could wind up being paralyzed sometime in his life. (R. 197-198). Johnson described the pain he has suffered since the incident as back pain generating all the way to his foot and through the whole right side of his body. He added that the pain prevents him from putting any pressure on his foot.  According to the Plaintiff, he experiences this pain every three or four minutes. (R. 198).

Johnson testified that he takes Ibuprofen, Motrin, Vicodin and other medications he could not pronounce. He added that all of the medications were prescribed by a doctor. (R. 198).  Johnson indicated that the medication sometimes causes side effects such as drowsiness, dry throat and vision difficulties. (R. 199).  The Plaintiff also testified that his doctor had recently referred him to a

2

neurosurgeon, and that he saw the neurosurgeon approximately two months prior to the hearing. According to Johnson, surgery was recommended, but he was told that his condition would not get better because the nerve might be damaged. (R. 199-200).

Johnson described his typical day as watching televison, going outside of the house for a little fresh air and then coming back inside. (R. 200). The Plaintiff added that his father did the cooking and the household chores and shopping along with the Plaintiff's brother. (R. 200). Johnson also testified that he has a driver's license, but does not drive or engage in any social activities. (R. 201). He also stated that his sleep was "painful" and that he wakes up every five or ten minutes throughout the night due to the pain. (R. 201). Johnson estimated that he could stand for less than an hour out of an eight hour workday, with no more than fifteen to twenty minutes at one time; could only walk for five or ten minutes for the whole day and could not sit for more than ten minutes at a time. (R. 202). He added that he was unable to climb, crouch or stoop and that he was bothered by dust and vibration. (R. 202).

The Plaintiff, pro se, also testified during the hearing following remand which was held on August 3, 2005. (R. 228-241). Johnson stated that he was 45 years old and presently lived with his parents. (R. 233). The Plaintiff added that he did not have a driver's license and had not driven since 2003. Johnson also testified that he was in prison from 1999 through 2002 and had not worked since his release. (R. 234-235).

According to the Plaintiff, he did outside work in the prison, which was where he injured his back in 2001. Johnson reported pain in his back which lessened a bit with pain medication, but then started again. (R. 235). The Plaintiff also complained of pain on his right side and occasional headaches. (R. 236).

3

Johnson testified that he could walk three or four blocks before having to stop; stand for five to ten minutes; sit for five minutes and could bend and kneel with limitations. (R. 236-237). He added that he could only lift two or three pounds and had no hobbies or social life. (R. 237). The Plaintiff also testified that he did no household chores and spent the day laying down, watching television and sometimes going outside for fresh air. (R. 238).

In addition to the testimony presented at the hearings, medical records were submitted to the ALJ, including medical records reflecting treatment from the State Department of Corrections for the period the Plaintiff was incarcerated. (R. 135-136, 151-189). A Health Slip/Pass dated June 1, 2001, stated that the Plaintiff was to have bed rest from June 1, 2001 through June 8, 2001. (R. 136). Another slip, dated February 18, 2002, indicated that the Plaintiff was restricted from lifting more than 15 pounds, and could do no pushing, pulling or bending. (R. 135).

Notes dated June 6, 2001, indicate that the Plaintiff complained of low back pain, problems moving his right leg and sitting. Johnson also reported radiating pain down his back. (R. 186). Examination showed limited range of motion when bending, pain on palpation in the right lower back, but no edema. The notes list an assessment of back pain and a planned referral to a doctor. (R. 186). The visit with the doctor resulted in bed rest for two days. (R. 185). Johnson again complained of back pain on June 13, 2001, and limited range of motion on twisting and bending was noted. There was no edema but the examiner found pain on palpation of the low back. (R. 184). Johnson was placed on no-work status for seven days, given a low bunk and precluded from sports activity for three months. (R. 183). The report of an x-ray of the lumbar spine taken on June 14, 2001, indicates a slight narrowing of the disc space between L5 and S1, with the other disc spaces well maintained and no recent fracture or dislocation. (R. 159).

4

The notes of a July 17, 2001 visit indicate that the back pain generating down the right leg continued.  Johnson was unable to bend over and touch his toes, but could touch his knees; had no muscle tension and a normal gait. (R. 181).  The report of an MRI performed on August 2, 2001, listed the following impression:

> There is  degenerative disc disease with desiccation L5-S1 with associated central and slightly to the right disc herniation.  This is slightly impinging on the anterior thecal sac.

(R. 158).

Notes dated August 29, 2001, indicate that the Plaintiff had a herniated nucleus pulposus at L5-S1 and that he was limited to lifting no more than twenty pounds. (R. 177).  The pain was seen as continuing in notes from November 26, 2001.  The Plaintiff described the pain as constant and indicated it radiated down his legs. (R. 173).

The pain persisted, as reflected in the notes of a February 18, 2002 visit, which indicate that the Plaintiff was being treated with  ibuprofen and given restrictions as to his activities. (R. 165, 172).  On April 15, 2002, the Plaintiff was seen as able to touch his toes, had full range of motion and normal gait and posture. (R. 162).

The final notes from the Department of Corrections, dated November 25, 2002, indicate that the Plaintiff was feeling better with treatment for his long term back pain.  Examination showed some discomfort in the lumbosacral spine.  The notes also include the recommendation that the Plaintiff exercise to tolerance. (R. 152-153).

An Adult Mental Status Evaluation dated January 29, 2003, recounts the back injury suffered by the Plaintiff. (R. 95).  Johnson was seen as cooperative, with normal posture and gait, speech, behavior, thought processes and thought content. (R. 95).  The report also indicates that the Plaintiff

took ibuprofen by prescription for his back pain and had been on it since June, 2000. (R. 96). Additionally, the report notes that the Plaintiff is able to take care of his hygiene without assistance, although he cannot bend to wash his feet, so has to prop them up. His meals are provided by his brother or his father. (R. 97). According to the Plaintiff, he was told that if he moved the wrong way he could be paralyzed for life, but did not recall the name of the doctor who gave that diagnosis. (R. 98). The assessment contained in the report was Pain Disorder due to a Medical Condition and Severe Psychosocial Stressors. (R. 97). The report lists a fair prognosis, provided that treatment could be obtained for the back pain, which was the Plaintiff's major complaint. (R. 98).

A Psychiatric Review Technique dated February 20, 2003, found that the Plaintiff suffered from a somatoform disorder (pain disorder due to medical condition) which was not deemed to be severe. (R. 99, 105). No limitations were seen as present. (R. 109). Similar findings were made in a Psychiatric Review Technique dated June 3, 2003. (R. 115-128).

The report of a consultative examination performed by Dr. Richard A. Reines on February 28, 2003, indicates that medications taken by the Plaintiff at the time of the examination included ibuprofen and that the Plaintiff drove a car. (R. 113). Examination revealed the Plaintiff to be in no acute distress. (R. 113). The Plaintiff's neck was supple without adenopathy and there was a full range of motion without restriction or pain. No clubbing, cyanosis or edema was seen in the extremities. (R. 114). The Plaintiff's back was described as tender to palpation over the lumbosacral spine; no spasms were present, with straight leg raising ten degrees on the left and five degrees on the right. Range of motion was limited with pain. (R. 114). All joints were intact, symmetric and freely movable; the Plaintiff's gait was normal and he was able to walk short distances on his toes and heels. Grip strength was 5/5 on the right and left. (R.114). The report concludes with the

impression of "lumbosacral syndrome." (R. 114).

A Medical Assessment of Ability to do Work-Related Activities (Physical) prepared by Dr. Reines on November 2, 2003 indicates that the Plaintiff could continuously lift/carry ten pounds; frequently lift/carry twenty pounds; occasionally lift/carry up to fifty pounds and occasionally lift up to one hundred pounds, but never carry over fifty pounds. (R. 131). The Assessment also found that in an eight hour workday, the Plaintiff could sit, stand or walk for six hours, with two hours at one time for each activity without interruption. (R. 132). Additionally, the Plaintiff could constantly perform simple grasping and fine manipulation with both hands and use both feet frequently. (R. 132). All of the postural activities (climbing, balancing, stooping, crouching, kneeling and crawling) were marked "occasionally" and no physical functions (reaching, handling, feeling, pushing/pulling, hearing or speaking) were seen as affected. (R. 133). Furthermore, there were no environmental restrictions caused by the impairments. (R. 134).

The report of the August 15, 2003 MRI lists an impression as follows:

> L5-S1: Right paracentral extrusion-type intervertebral disc herniation projecting posterolaterally, maintaining contiguity with its parent disc, contacting the right S-1 nerve root in the lateral recess.

(R. 149).

A Neurology Consultation Report from Richard P. Singer, M.D., dated August 21, 2003 recounts the Plaintiff's complaints of pain in his back with pain radiating down his right lower extremity as well as the results of an MRI of the lumbar spine. (R. 139). The report indicates that the Plaintiff was being treated with Soma and Motrin but has been unable to work.(R. 139).

Examination revealed that the Plaintiff was in no acute distress and that no peripheral edema was noted on the extremities. Additionally, the Plaintiff was seen as alert, cooperative, oriented in

time, place and person, with normal concentration, attention and memory recall. (R. 139). Straight leg raising was positive on the right at thirty degrees, with strength on the right limited by severe pain. There was no atrophy noted. (R. 139). Deep tendon reflexes were 1+ in the upper extremities and trace at the knees. The Plaintiff's plantar responses were neutral and he had an antalgic gait. (R. 140). The report listed an impression of "Right L5-S1 disk" and recommended the Plaintiff return for EMG and nerve conduction studies as well as referral to a neurosurgeon for consideration of an L5-S1 laminectomy. (R. 140). The report of an Electrodiagnostic Study dated September 23, 2003, states an impression that the findings were "consistent with a right L5 radiculopathy with evidence of minimal distal active denervation." (R. 138).

On November 14, 2003, Dr. Antoinette Shorter provided the Plaintiff with a work excuse form stating that the Plaintiff should not return to work until further notice due to low back pain which radiated to the right lower extremity and that he was to see a neurosurgeon. (R. 143). A note from Dr. Lloyd Maliner, a neurosurgeon, dated November 24, 2003, restricted the Plaintiff from lifting more than fifteen pounds, with no climbing and limited lifting and stooping. Dr. Maliner also provided the Plaintiff with a prescription for Vicodin on that date. (R. 150).

On August 19, 2005, the ALJ issued a decision finding that the Plaintiff had the severe impairment of degenerative disc disease and lumbar radiculopathy, but that the impairment did not meet or medically equal the severity in the listing of impairments. (R. 217). Additionally, the ALJ found that the Plaintiff's allegations regarding his limitations were not totally credible. (R. 217). The ALJ determined that while the Plaintiff was unable to perform his past relevant work, he retained the residual functional capacity to perform a full range of sedentary work, and thus, the Plaintiff was not disabled. (R. 217).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient

reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Regulations promulgated by the Commissioner establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920(a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the

national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that she is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

In the present case, the ALJ found, at step five, that the Plaintiff could not perform his past relevant work, but did have the residual functional capacity to perform a full range of sedentary work. Thus, according to the ALJ, the Plaintiff was not disabled.

As noted above, this cause has been before this Court previously. The decision issued by the first ALJ on February 3, 2004 found that the Plaintiff was able to perform the full range of sedentary work with limited pushing/pulling with the lower extremities, no climbing and occasional balancing, stooping, kneeling, crouching and crawling. (R. 17). This Court reversed and remanded, finding that the ALJ improperly failed to make any statements concerning the effect of the impairments or to list any specific jobs the Plaintiff could perform, thus failing to comply with the requirements of step five of the evaluation process. (R. 260).

As noted in the prior decision of this Court, the use of the grids is appropriate under step five unless the claimant is unable to perform a full range of work at the given residual functional level or if the claimant has nonexertional impairments that significantly limit basic work skills. Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004). "Significantly limit basic work skills" has been interpreted as limitations which would prohibit the person from performing a "wide range" of work at the given work level. Id. at 1243. If the ALJ makes a determination that the nonexertional limitations do not significantly limit basic work skills, the ALJ may properly rely on the grids to

11

determine if the claimant is disabled. Id.  However, this requires a specific finding by the ALJ. Id. at 1244, quoting, Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  Additionally, in resolving the issues at step five, the ALJ has the obligation to articulate specific jobs that a claimant can perform, a finding which must be supported by substantial evidence. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).

The current decision by the ALJ, which was based on the same medical evidence produced previously, also finds that the Plaintiff can perform the full range of sedentary work, but makes no mention of the limitations as to pushing/pulling with the lower extremities, climbing, balancing, stooping, kneeling, crouching and crawling found previously. (R. 215).  Since no limitations were found, the ALJ applied the grids to find that the Plaintiff was not disabled.

In response to an Order issued by this Court, the Defendant has filed a supplemental brief addressing the issue of whether this modification of the residual functional capacity was correct. According to the Defendant, the second ALJ was not bound by the decision of the first ALJ and that therefore, no error occurred.

As part of the supplemental briefing, the Defendant relied on 20 C.F.R. §416.1453 to assert that the ALJ was not bound by the prior decision and that review was de novo.  However, a review of the regulation fails to support that reliance.  Instead, the cited provision states in pertinent part as follows:

> (a) General.  The administrative law judge shall issue a written decision which gives the findings of fact and the reasons for the decision.  The decision must be based on evidence offered at the hearing or otherwise included in the record.  The administrative law judge shall mail a copy of the decision to all the parties at their last known address. The Appeals Council may also receive a copy of the decision.

12

The Court also finds that the Defendant's reliance on <u>Brachtel v. Apfel</u>, 132 F.3d 417 (8th Cir. 1997) is misplaced. As set out in the Supplemental Brief, <u>Brachtel</u> involved an issue relating to a hypothetical provided to the vocational expert and whether the District Court found that the Plaintiff needed to lie down. In the decision, the Eighth Circuit found that the law of the case doctrine was inapplicable since the District Court did not actually instruct the ALJ to proceed on remand based on such a finding. However, the Court, after noting that the law of the case doctrine did in fact apply to administrative agencies on remand, stated that "... if the District Court actually found that Brachtel needed to lie down, the ALJ would be bound by that finding." <u>Id</u>. at 420.

In the present case, the issue is the application of step five of the sequential analysis. In the prior decision, this Court clearly held that the analysis by the ALJ was incorrect, and in fact, specifically remanded the case for "further proceedings consistent with this Order relating to step 5 of the evaluation process." Thus, unlike <u>Brachtel</u>, there has been a determination by the Court, which the ALJ should properly follow. However, rather than proceed to the full step five process, the ALJ in the second decision removed the limitations found earlier, without any change in evidence or any explanation. This constitutes error and once again, requires reversal.

Accordingly, a REMAND is required for the ALJ to properly evaluate the limitations found by the initial ALJ as previously ordered by this Court. Based on the dispositive nature of this determination, the Court will not address the remaining contentions raised by the Plaintiff.

### III. <u>CONCLUSION</u>

Based on the foregoing, this Court finds that the decision by the ALJ is not supported by substantial evidence and that the correct legal standards were not applied. Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

(1) The Motion for Summary Judgment filed by the Plaintiff (D.E. #6) is **GRANTED.**

(2) The Motion for Summary Judgment filed by the Defendant (D.E. #21) is **DENIED**.

(3) The decision by the Commissioner is REVERSED AND REMANDED for further

proceedings consistent with this Order.

**DONE AND ORDERED** this_____16_____ day of May, 2007.


ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE


cc:  Milton Aponte, AUSA
     Gurtram J. Johnson, pro se
     2814 Washington Street
     Hollywood, FL 33020

14